## McDONALD *v.* CITY OF WEST BRANCH, MICHIGAN, ET AL.

No. 83–219.   Argued February 27, 1984—Decided April 18, 1984

BRENNAN, J., delivered the opinion for a unanimous Court.

*David Achtenberg* argued the cause for petitioner. With him on the briefs was *Irving Achtenberg*.

*Richard G. Smith* argued the cause for respondents. With him on the briefs was *Mona C. Doyle*.*

JUSTICE BRENNAN delivered the opinion of the Court.

The question presented in this § 1983 action is whether a federal court may accord preclusive effect to an unappealed arbitration award in a case brought under that statute.[1] In an unpublished opinion, the Court of Appeals for the Sixth Circuit held that such awards have preclusive effect. We granted certiorari, 464 U. S. 813 (1983), and now reverse.

## I

On November 26, 1976, petitioner Gary McDonald, then a West Branch, Mich., police officer, was discharged. McDon-

---

*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations et al. by *Robert M. Weinberg, Michael H. Gottesman, Laurence Gold, J. Albert Woll, Bernard Kleiman*, and *Carl B. Frankel;* and for the Edwin F. Mandel Legal Aid Clinic by *Gary H. Palm*.

*Robert E. Williams, Douglas S. McDowell*, and *Thomas R. Bagby* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging affirmance.

[1] Title 42 U. S. C. § 1983 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ald filed a grievance pursuant to the collective-bargaining agreement then in force between West Branch and the United Steelworkers of America (the Union), contending that there was "no proper cause" for his discharge, and that, as a result, the discharge violated the collective-bargaining agreement.[2] After the preliminary steps in the contractual grievance procedure had been exhausted, the grievance was taken to arbitration. The arbitrator ruled against McDonald, however, finding that there was just cause for his discharge.

McDonald did not appeal the arbitrator's decision. Subsequently, however, he filed this § 1983 action against the city of West Branch and certain of its officials, including its Chief of Police, Paul Longstreet.[3] In his complaint, McDonald alleged that he was discharged for exercising his First Amendment rights of freedom of speech, freedom of association, and freedom to petition the government for redress of grievances.[4] The case was tried to a jury which returned a verdict against Longstreet, but in favor of the remaining defendants.

On appeal, the Court of Appeals for the Sixth Circuit reversed the judgment against Longstreet. 709 F. 2d 1505 (1983). The court reasoned that the parties had agreed to settle their disputes through the arbitration process and

---

[2] Section 3.0 of Article III of the collective-bargaining agreement between the city of West Branch and the Union provided in pertinent part:

"Among the powers, rights, authority, duties and responsibilities which shall continue to be vested in the City of West Branch, but not intended as a wholly inclusive list of them, shall be: The right to . . . suspend or discharge employees for proper cause."

[3] In addition to Longstreet, the complaint named the following city officials as defendants: Acting City Manager Bernard Olson, City Attorney Charles Jennings, and City Attorney Demetre Ellias. McDonald also named the Union as a defendant, claiming that it had breached its state-law duty to represent him fairly. The District Court declined to exercise pendent jurisdiction over this claim.

[4] In addition, McDonald alleged that his discharge deprived him of property without due process of law. The jury, however, rejected this claim.

that the arbitrator had considered the reasons for McDonald's discharge. Finding that the arbitration process had not been abused, the Court of Appeals concluded that McDonald's First Amendment claims were barred by res judicata and collateral estoppel.[5]

## II

## A

At the outset, we must consider whether federal courts are obligated by statute to accord res judicata or collateral-estoppel effect to the arbitrator's decision. Respondents contend that the Federal Full Faith and Credit Statute, 28 U. S. C. § 1738, requires that we give preclusive effect to the arbitration award.

Our cases establish that § 1738 obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment. See, e. g., Migra v. Warren City School District Board of Education, 465 U. S. 75, 81 (1984); Kremer v. Chemical Construction Corp., 456 U. S. 461, 466 (1982). As we explained in Kremer, however, "[a]rbitration decisions . . . are not subject to the mandate of § 1738." Id., at 477. This conclusion follows from the plain language of § 1738 which provides in pertinent part that the "judicial proceedings [of any court

---

[5] Earlier this Term, we noted that various phrases have been used to describe the preclusive effects of former judgments. Migra v. Warren City School District Board of Education, 465 U. S. 75 (1984). Because the Court of Appeals used the terms "res judicata" and "collateral estoppel," we find it convenient to use these terms in this opinion. Thus, in this case, we utilize the term "res judicata" to refer to the effect of a judgment on the merits in barring a subsequent suit between the same parties or their privies that is based on the same claim. See Parklane Hosiery Co. v. Shore, 439 U. S. 322, 326, n. 5 (1979). By contrast, "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U. S. 90, 94 (1980).

of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken." (Emphasis added.)[6] Arbitration is not a "judicial proceeding" and, therefore, § 1738 does not apply to arbitration awards.[7]

## B

Because federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned. We therefore consider the question whether it was appropriate for the Court of Appeals to fashion such a rule.

On two previous occasions this Court has considered the contention that an award in an arbitration proceeding brought pursuant to a collective-bargaining agreement should preclude a subsequent suit in federal court. In both instances we rejected the claim.

*Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36 (1974), was an action under Title VII of the Civil Rights Act of 1964

---

[6] The complete text of § 1738 provides:

"The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

[7] The statute also applies to Acts of state legislatures and records of state courts. See n. 6, *supra*. Arbitration obviously falls into neither of these categories.

brought by an employee who had unsuccessfully claimed in an arbitration proceeding that his discharge was racially motivated. Although Alexander protested the same discharge in the Title VII action, we held that his Title VII claim was not foreclosed by the arbitral decision against him.[8] In addition, we declined to adopt a rule that would have required federal courts to defer to an arbitrator's decision on a discrimination claim when "(i) the claim was before the arbitrator; (ii) the collective-bargaining agreement prohibited the form of discrimination charged in the suit under Title VII; and (iii) the arbitrator has authority to rule on the claim and to fashion a remedy." *Id.*, at 55–56.

Similarly, in *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728 (1981), Barrentine and a fellow employee had unsuccessfully submitted wage claims to arbitration. Nevertheless, we rejected the contention that the arbitration award precluded a subsequent suit based on the same underlying facts alleging a violation of the minimum wage provisions of the Fair Labor Standards Act. *Id.*, at 745–746.

Our rejection of a rule of preclusion in *Barrentine* and our rejection of a rule of deferral in *Gardner-Denver* were based in large part on our conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes. 450 U. S., at 740–746; 415 U. S., at 56–60. These considerations similarly require that we find the doctrines of res judicata and collateral estoppel inapplicable in this § 1983 action.

---

[8] The Court of Appeals in *Gardner-Denver* had concluded that the Title VII suit was barred by the doctrines of election of remedies and waiver, and by "the federal policy favoring arbitration of labor disputes." 415 U. S., at 46. In addition to holding that none of these doctrines justified a rule of preclusion, we noted that "[t]he policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of *res judicata* and collateral estoppel." *Id.*, at 49, n. 10.

Because § 1983 creates a cause of action, there is, of course, no question that Congress intended it to be judicially enforceable. Indeed, as we explained in *Mitchum* v. *Foster*, 407 U. S. 225, 242 (1972), "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." See also *Patsy* v. *Florida Board of Regents*, 457 U. S. 496, 503 (1982). And, although arbitration is well suited to resolving contractual disputes, our decisions in *Barrentine* and *Gardner-Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent § 1983 action would undermine that statute's efficacy in protecting federal rights. We need only briefly reiterate the considerations that support this conclusion.

First, an arbitrator's expertise "pertains primarily to the law of the shop, not the law of the land." *Gardner-Denver, supra*, at 57. An arbitrator may not, therefore, have the expertise required to resolve the complex legal questions that arise in § 1983 actions.[9]

Second, because an arbitrator's authority derives solely from the contract, *Barrentine, supra*, at 744, an arbitrator may not have the authority to enforce § 1983. As we explained in *Gardner-Denver:* "The arbitrator . . . has no general authority to invoke public laws that conflict with the bargain between the parties . . . . If an arbitral decision is based 'solely upon the arbitrator's view of the requirements

---

[9] Indeed, many arbitrators are not lawyers. See *Barrentine* v. *Arkansas-Best Freight System, Inc.* 450 U. S. 728, 743 (1981); *Gardner-Denver*, 415 U. S., at 57, n. 18. In addition, *amici* AFL–CIO and the United Steelworkers of America note that "[t]he union's case in a labor arbitration is commonly prepared and presented by non-lawyers." Brief as *Amici Curiae* 10.

of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced." 415 U. S., at 53, quoting *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593, 597 (1960). Indeed, when the rights guaranteed by § 1983 conflict with provisions of the collective-bargaining agreement, the arbitrator must enforce the agreement. *Gardner-Denver*, 415 U. S., at 43.

Third, when, as is usually the case,[10] the union has exclusive control over the "manner and extent to which an individual grievance is presented," *Gardner-Denver, supra,* at 58, n. 19, there is an additional reason why arbitration is an inadequate substitute for judicial proceedings. The union's interests and those of the individual employee are not always identical or even compatible. As a result, the union may present the employee's grievance less vigorously, or make different strategic choices, than would the employee. See *Gardner-Denver, supra,* at 58, n. 19; *Barrentine, supra,* at 742. Thus, were an arbitration award accorded preclusive effect, an employee's opportunity to be compensated for a constitutional deprivation might be lost merely because it was not in the union's interest to press his claim vigorously.

Finally, arbitral factfinding is generally not equivalent to judicial factfinding. As we explained in *Gardner-Denver*, "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." 415 U. S., at 57–58.

---

[10] *Amici* AFL–CIO and the United Steelworkers of America inform us that under most collective-bargaining agreements the union "controls access to the arbitrator, the strategy and tactics of how to present the case, the nature of the relief sought, and the actual presentation of the case." *Id.,* at 7.

It is apparent, therefore, that in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial.[11]   Consequently, according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide.[12]   We therefore hold that in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement.[13]

---

[11] In addition to diminishing the protection of federal rights, a rule of preclusion might have a detrimental effect on the arbitral process.   Were such a rule adopted, employees who were aware of this rule and who believed that arbitration would not protect their § 1983 rights as effectively as an action in a court might bypass arbitration.   See *Gardner-Denver, supra,* at 59.

[12] The Court of Appeals justified its application of res judicata and collateral estoppel in part by stating that "[t]he parties have agreed to settle this dispute through the private means of arbitration."   In both *Gardner-Denver* and *Barrentine*, however, we rejected similar contentions.   See *Gardner-Denver, supra,* at 51–52; *Barrentine, supra,* at 736–746.   For example, in *Gardner-Denver* we considered the argument that the arbitration provision of the collective-bargaining agreement waived the employee's right to bring a Title VII action.   We found this contention unpersuasive, however, concluding that "[t]he rights conferred [by Title VII] can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII."   *Gardner-Denver, supra,* at 51.   Similarly, because preclusion of a judicial action would gravely undermine the effectiveness of § 1983, we must reject the Court of Appeals' reliance on and deference to the provisions of the collective-bargaining agreement.

[13] Consistent with our decisions in *Barrentine* and *Gardner-Denver*, an arbitral decision may be admitted as evidence in a § 1983 action.   As in those cases:

"We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case.   Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with [the statute or constitution], the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

issue [in the judicial proceeding], and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's [statutory or constitutional] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress . . . thought it necessary to provide a judicial forum for the ultimate resolution of [these] claims. It is the duty of courts to assure the full availability of this forum." *Gardner-Denver*, 415 U. S., at 60, n. 21.

See also *Barrentine*, 450 U. S., at 743–744, n. 22.