**AMERICAN POSTAL WORKERS UNION, AFL–CIO, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. A. No. 84–909.**

United States District Court, District of Columbia.

Feb. 28, 1985.

Darryl J. Anderson, Anton Hajjar, Washington, D.C., for plaintiffs.

Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This action by a discharged postal worker and his union seeks reinstatement and other relief on the ground that his discharge violated the First Amendment guarantee of free speech. A number of issues in the case have been resolved on two prior motions for summary judgment. The Court decided, among other things, that the speech of the discharged worker, Joseph Gordon, was constitutionally protected and that, assuming his speech caused the discharge, his interest in the speech outweighed the government's interest in effectively carrying out its duties. *American Postal Workers Union v. United States Postal Service*, 598 F.Supp. 564, 570–72 (D.D.C.1984). Thus the remaining issue is whether Gordon's speech was a substantial or motivating factor in the discharge, and if it was, whether the Postal Service would have fired Gordon even in the absence of his protected speech. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

The Court ordered the case to proceed to trial on this issue. However, in lieu of presenting evidence, the parties stipulated all the underlying facts in the case, relying primarily on the record of an arbitration hearing where it was held that the discharge did not violate the union contract.[1]

The Court has considered the stipulation of facts, the transcript of the arbitration hearing, and the entire record herein. This Memorandum constitutes its findings of fact and conclusions of law.

The essential facts of Gordon's speech and the circumstances leading to his discharge are recounted at 598 F.Supp. at 566–67 and need not be reiterated in detail here. Suffice it to note that in a constitutionally protected column Gordon wrote for his union newspaper, Gordon purported to

---

1. The arbitrator did not reach the ultimate factual issue of whether the speech caused the discharge. Even if he had, this Court would not be bound by that determination in deciding plaintiffs' constitutional claim. *McDonald v. City of West Branch*, — U.S. —, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984).

reveal conduct on the job that, if it had in fact occurred, he and his union admit would constitute a dischargeable offense. The conduct was reading a piece of mail while sorting mail and disclosing its contents. However, Gordon and his union maintain that the conduct described in the column did not occur and that the column was a fabrication for purposes of "literary license."

The Postal Service has maintained consistently that it fired Gordon not for his speech but for the conduct revealed by his speech. The decision to fire Gordon was made by Howard Byrne, director of labor relations at the Royal Oak, Mich., post office.[2] Byrne was told of the column by the postmaster and asked Charlene Bonds, Gordon's general supervisor, to investigate. When Bonds brought the apparent violation to Gordon's attention, Gordon told her that the piece of mail he discussed in his column, a fund-raising letter on behalf of the National Right to Work Committee by Congressman Phillip Crane, came to his attention outside his job from a friend who had seen the letter. He said he fabricated the story about finding the letter at work to dramatize the irony of unionized postal workers sorting mail for an anti-union organization. Bonds obtained a written statement from Gordon to the same effect.[3] Gordon sent a brief retraction to be published in the next issue of the union newspaper, but his discharge preceded publication.

Bonds promptly wrote a report to Byrne recounting her meeting with Gordon and attaching a copy of his statement. However, she made no recommendation and did not say whether she believed the column or Gordon's later statement. Upon receipt Byrne immediately drafted the letter of discharge. The only facts before him at the time of this decision were the newspaper column itself and Gordon's written statement contradicting the column. The discharge notice stated that Gordon was being fired for violating the prohibition in the Domestic Mail Manual on "reading, divulging, or disclosing of the contents of mail," a serious infraction even where as here third-class mail is involved.

At the first stage of the subsequent grievance proceeding on the discharge, supervisor Linda Dunlap asked Gordon if he could produce his friend who had seen the Crane letter to corroborate Gordon's story. Gordon told her the friend "did not want to get involved."[4] The friend later testified at the arbitration hearing, giving an account consistent with Gordon's. Other testimony at the arbitration hearing from Byrne and other supervisors indicated that they had no animosity toward him for his activities as a shop steward and editor of the local union's newspaper and that Gordon had a "very high or good" reputation as a steward.[5]

The Court is not required to decide whether Gordon read a piece of mail on duty and disclosed its contents in violation of postal regulations. The issue that must be resolved is the state of mind of Gordon's supervisors at the time they fired him. There were two possible reasons for discharging Gordon, one permissible and one impermissible. The permissible reason was that he had violated postal regulations by reading a piece of mail on the job and disclosing its contents. The impermissible reason was that he had exercised his speech rights and in so doing had caused his supervisors to retaliate.

When Byrne drafted the letter discharging Gordon, he had only two pieces of direct evidence before him—the column containing the alleged admission and the subsequent statement contradicting it. While admissions are often treated as conclusive proof even in the face of subsequent contradiction, what ordinarily lends credence to an admission is that the speaker believes his remarks will not come to the

---

**2.** Arbitration Transcript at 147.

**3.** The statement is excerpted at 598 F.Supp. at 567.

**4.** Arbitration Transcript at 134.

**5.** Arbitration Transcript at 148.

attention of the authorities. That factor is missing here because the column was published and circulated to union members and indirectly to Postal Service management. In addition, Gordon's statement about the fabrication was not inherently incredible. It was consistent with his known flamboyance in writing style and personality. Moreover, Gordon was a long-time employee with several awards and commendations for unusual dedication to his job. He was respected in his duties as a union steward and he was entrusted by the Postal Service to the sensitive position of registry clerk, guarding and accounting for valuables sent through the mail.

■ Thus, when the two pieces of evidence before Byrne are juxtaposed with what was known at the time about Gordon's character, the Court believes that a reasonable decision-maker would have found it impossible to come to a reasoned decision as to which version of events should be accepted.

To avoid basing a decision on the impermissible ground of punishing protected speech, a reasonable decision-maker was obligated at this point to investigate further to obtain sufficient evidence to support a finding that violation of postal regulations had occurred. Because Byrne did not do so but proceeded precipitously with the discharge, Byrne necessarily was substantially motivated by Gordon's protected speech.

This improper motivation was not cured in the subsequent grievance process.

While Gordon at one point declined to name the friend who had seen the Crane letter, he was never pressed on the point and he did produce the man at the arbitration hearing. The Postal Service did find that Gordon had worked third-class mail for a 45-minute period and a 90-minute period during the time that the Crane letter may have been processed by the Royal Oak post office, but these brief stints did not render it substantially more likely that he had seen the Crane letter on the job. The lack of evidence supporting the discharge on the permissible ground was still apparent: the arbitrator himself failed to decide whether Gordon had in fact violated the regulations.

■ Plaintiffs of course have the burden of proof of showing improper motivation for the discharge.[6] There is no direct evidence of improper motivation, but that is often the case when one is attempting to show that a stated and permissible ground for a decision is pretextual, or at least that it was fatally mixed with an impermissible ground. In the absence of direct evidence, plaintiffs in such cases can meet their burden by circumstantial evidence. *Clark v. Library of Congress*, 750 F.2d 89, 101–02 (D.C.Cir.1984). Courts are required to consider the possible inferences from a set of facts and to draw those inferences that seem most reasonable. This is a close case. What tips the balance is the precipitous behavior of the Postal Service in a situation that called for a more measured and careful response.

---

6. Plaintiffs are incorrect in arguing that once they have shown that the protected speech was a "but-for cause" of the discharge, they have met their burden under *Mt. Healthy* and the burden shifts to the Postal Service to show it would have discharged Gordon even in the absence of the protected speech. What the plaintiffs must show before the burden shifts to the defendant is that a constitutional *violation* was a substantial cause of the discharge. *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 575; *see also Clark v. Library of Congress,* 750 F.2d 89, 101 (D.C.Cir. 1984). This inquiry in this case contains an important element of motive. It was perfectly permissible for the Postal Service to discharge Gordon and use the protected speech as a piece of evidence showing dischargeable conduct; what was not permitted was discharge based on speech as speech, that is, as an expression of ideas. The difference is thus between speech *as evidence* and speech *as speech.* A constitutional violation has been shown only when protected speech as speech is a substantial cause of the discharge. Only then does the burden shift to the employer to break the causal link by demonstrating that it would have reached the same decision in the absence of the protected conduct. The Supreme Court established this second element of the causation inquiry to avoid immunizing employees who engage in protected speech from having their fitness for the job assessed. *Id.,* 429 U.S. at 286–87, 97 S.Ct. at 575–76.

Plaintiffs having met their burden, the Postal Service is entitled to show it would have reached the same decision in the absence of the protected speech. No such showing has been made here. As discussed above, the Court does not dispute the defendant's contention that it could use the protected speech as evidence for unprotected dischargeable conduct. The dispute is with the defendant's assertion that the sole motive for the discharge was Gordon's unprotected conduct. Defendant's Trial Brief at 14. The Court has already found against the Postal Service on this issue, even when the burden of proof was on the plaintiffs.[7]

■ The Court believes reinstatement is the proper equitable relief to be granted in this case but that full back pay is not appropriate. While the Court earlier held that plaintiffs' interest in free speech was strong enough in relation to the government's interest in this case that discharge based on speech was not appropriate, 598 F.Supp. at 570–72, this did not preclude some lesser form of reasonable discipline. Gordon conceded by his retraction that his statement about the Crane letter was ill-advised. It created a clear implication that postal workers could disclose the contents of mail they had seen at work if it suited their personal advantage. Under these circumstances, an award of back pay would appear to create an inappropriate windfall for plaintiff.

Therefore, it is the Court's view that Gordon should be reinstated to his prior rank but that the Postal Service is entitled to impose some appropriate penalty short of discharge consistent with the agency's established procedures. The parties have already agreed to try to settle the appropriate amount of back pay. Because this entails consideration of technical contract provisions regarding back pay, seniority rights, pension benefits and other benefits, the Court believes that barring agreement by counsel settling the penalty and related adjustments, the appropriate forum for settling these details is not this Court but the established mechanism under the union's contract with the Postal Service. Accordingly, the decision of the appropriate penalty to be imposed on Gordon in the light of this Memorandum, and the adjustments to his pay and benefits in accordance with that penalty, will be remanded for determination by the Postal Service.

Judgment shall be entered for plaintiffs. An appropriate Order is filed herewith.

### ORDER

This matter having come before the Court for resolution on a stipulated record, and the Court having this day filed a Memorandum constituting its findings of fact and conclusions of law, it is hereby

ORDERED that judgment is entered for plaintiffs; and it is further

ORDERED that defendant United States Postal Service is directed within 30 days to reinstate plaintiff Gordon to his prior rank at the time of discharge; and it is further

ORDERED that absent agreement of counsel, the case is remanded to the Postal Service for further proceedings consistent with this Memorandum to determine the appropriate penalty short of discharge and to resolve issues of back pay and benefits consistent with such penalty by appropriate procedures.

7. In this regard, the Court believes that both plaintiffs and defendant have confused the two steps of the *Mt. Healthy* causation inquiry. The Postal Service seems to concede that the burden of proof is properly on it to show that its motive was to discharge Gordon for his conduct allegedly revealed by the protected speech. Defendant's Trial Brief at 11, 13. For reasons stated above, the Court believes the burden is on plaintiff, because plaintiff must show that a constitutional violation has occurred before the burden shifts. The second stage of the causation inquiry in which the Postal Service does have the burden focuses on whether there were such weighty additional factors for the discharge besides the constitutional violation that the discharge would have occurred anyway. Here, there was a suspicion that dischargeable conduct had occurred. But because there was insufficient evidence to support a determination that the conduct had in fact occurred, the Postal Service has failed to show the discharge would have occurred anyway.