ROADMASTER
CORPORATION, Plaintiff,

v.

PRODUCTION & MAINTENANCE EMPLOYEES' LOCAL 504, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Defendant.

Civ. A. No. 87–4032.

United States District Court, S.D. Illinois.

March 26, 1987.

Thomas P. Krukowski, David W. Loeffler, Krukowski & Costello, Milwaukee, Wis., Kurtis B. Reeg, Coburn, Croft & Putzell, Belleville, Ill., for plaintiff.

Murphy Hart, Hart & Hart, Benton, Ill., Michael O'Hara, Cavanagh, Hosteny & O'Hara, Springfield, Ill., Susan M. Sacks, Connerton & Bernstein, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Plaintiff, Roadmaster Corporation (Roadmaster), has brought this suit seeking vacation of an arbitration award rendered against it and in favor of defendant, Production & Maintenance Employees Local 504 (Local 504). Local 504 has counterclaimed asking this Court to find the award enforceable, however the union does not seek enforcement of the entire award at this time. Both sides have moved for summary judgment on their claims and this Court heard argument addressing the motions on March 20, 1987. The factual and procedural background surrounding the ongoing dispute between union and company is somewhat complicated. Though the issue before the Court is whether or not the arbitrator exceeded his authority, the Court finds it provident to outline the factual and procedural background involved.

## BACKGROUND

Roadmaster is a privately held Delaware corporation licensed to do business in Illinois. Its principal place of business is a bicycle manufacturing plant located in Olney, Illinois. In November, 1982, Roadmaster entered into a collective bargaining agreement with United Employees Union Number One covering the terms and conditions of employment of Roadmaster plant employees. The agreement was to be effective from December 1, 1982 to February 28, 1986.

In the summer of 1985 the bargaining unit employees struck over wage concessions being sought in a company initiated wage re-opener. During the strike, the company hired between 500 and 600 permanent replacements. Also, during the strike, members of United Employees Union Number One voted to merge with Local 771 of the Laborers' International Union of North America. The officers of both unions sent notification to the company on August 6, 1987 stating that the two unions accepted Roadmaster's last offer and that employees would return to work the next day. The company took the position that the employees were not entitled to return immediately as permanent replacements had been hired.

The merger between Union Number One and Local 771 had not been finalized at the time the employees voted to return to work. Thereupon, another meeting was held to decide whether the employees should affiliate directly with the Laborers Union by establishing a separate local union. As union officials did not have a list of replacement employees, they requested Roadmaster to post notice of the meeting at the plant and to provide a list of the names of all bargaining unit employees. The company refused both requests. The meeting was held after notice was published in the local media and the employees voted in favor of affiliating. Local 504 was thereafter chartered.

From August, 1985 until March 6, 1986, Roadmaster expressed reservations and concerns as to which union was actually entitled to recognition. Grievances were filed by Local 504 over actions taken by the company allegedly out of concern over which labor organization was entitled to recognition. On December 16, 1985, Roadmaster sent identical letters to officials of Local 504, Local 771 and United Employees Union Number One. The letters were the same except for the name of the union. The letter to Local 504 read:

Pursuant to Article 34 of the current collective bargaining agreement between United Employees Union Local No. 1 and Roadmaster Corporation, and pursuant

to Section 8(d) of the National Labor Relations Act, this letter constitutes notice of the intent of Roadmaster Corporation to terminate the collective bargaining agreement between Roadmaster corporation and United Employees Union Local No. 1 at 12 o'clock midnight, February 28, 1986.

This letter and notice is not to be construed as recognition of Production and Maintenance Employees Local 504 as the collective bargaining representative of the Production and Maintenance Employees at Roadmaster Corporation. Further, this notice does not constitute a waiver and is without prejudice of any rights the employer has or may have to assert that Production and Maintenance Employees Local 504 is not the collective bargaining representative of Roadmaster Corporation's Production and Maintenance Employees under the National Labor Relations Act. This notice is given solely for purposes of terminating the collective bargaining agreement set to expire at 12 o'clock midnight, February 28, 1986.

Between the time the letters were sent and the date the contract was to expire grievances were filed and suits to compel arbitration were started. The company did not offer to negotiate with Local 504 over possible terms of a new contract. This Court ordered the parties to arbitration on two grievances and after the contract date had expired more grievances were filed. Orders to compel were made and various awards rendered. After the dust settled, the four grievances left at the time were submitted to arbitrator Robert G. Howlett for resolution. It is arbitrator Howlett's award, or at least a portion of it, which is the subject matter of the instant suit.

## ANALYSIS

Arbitrator Howlett decided in favor of Roadmaster on two grievances dealing with employee recall and job bidding respectively. His award as to those grievances is not questioned. A grievance dealing with union security provisions, specifically dues checkoffs which the company refused to make or tender, was decided in favor of the union. The company does not contest the finding of liability in the award, however the exact amount owing is dependent on another part of the award which is challenged. Roadmaster challenges the arbitrator's award in favor of the union on the grievance concerning the termination of rollover of the contract.

It is the union's contention that the collective bargaining agreement between the parties rolled over and became effective for another year after midnight on February 28, 1986. Local 504 argues that Article 34 of the contract was not complied with by Roadmaster, as they failed to offer to negotiate after giving notice of termination. Roadmaster argues that notice was all that was required of the company in order to terminate the contract under Article 34. Article 34 reads:

### DURATION

A. This Agreement made and entered into and executed at Olney, Illinois, shall remain in full force and effect as of December 1, 1982, and terminating at 12 o'clock midnight February 28, 1986. This agreement shall continue in full force from year to year thereafter, unless either party desiring to amend or terminate this Agreement shall serve upon the other party written notice, by certified mail, at least sixty (60) days prior to the date it desires to amend or terminate the Agreement.

In deciding in favor of the union, Arbitrator Howlett dedicated eighteen pages of his written decision to the termination or rollover grievance. In reading these eighteen pages it becomes clear that Howlett was bent on expanding or redefining the roll of an arbitrator. In doing so he stepped out of his roll as interpreter of the contract and into the realm of law making. For that reason, this Court cannot find that portion of his award enforceable and is obliged to vacate it.

Arbitrator Howlett found that Roadmaster had violated Section 8(d) of the National Labor Relations Act (29 U.S.C. § 158(d)) by refusing to offer to bargain with the union

prior to the termination of the contract.[1] Roadmaster claims that by invoking the statute the arbitrator improperly trumped the contract with the positive law. Both the union and arbitrator Howlett maintain that a collective bargaining agreement automatically includes all applicable law and thus when an arbitrator makes an award based on applicable law he is actually deciding the case within the framework of the agreement.

This Court cannot side with the position taken by the arbitrator and the union. Collective bargaining agreements often contain a provision incorporating applicable law or empowering an arbitrator to do so in interpreting the contract. That is not the case in the agreement between Roadmaster and the union. If one adopts the arbitrator and union's position, not only would incorporation provisions in a contract be rendered meaningless, but the process of contract negotiation and interpretation would be unreasonably burdened with constant reflection as to meaning in light of the ever changing statutory and common law.

■ It is true that an arbitrator may find an implied condition or fill in gaps in the contract using applicable law. *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180 (7th Cir.1985). However, an arbitrator may not ignore the plain language of the contract and invoke statutory law. *McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas-Best Freight Systems, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981);

*Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In fact, in *Barrentine* the Supreme Court stated that an arbitrator was required to effectuate the intent of the parties rather than enforce the Fair Labor Standards Act. Hence he must choose to deny a statutory right if it is inimical to the contract, for his duty and expertise do not include independent statutory interpretation. *Barrentine,* 450 U.S. at 744, 101 S.Ct. at 1446. This Court finds arbitrator Howlett's reliance on a violation of the National Labor Relations Act no different from the proscribed enforcement of the FLSA in lieu of contract provisions to the contrary.

■ If arbitrator Howlett's decision could be read as ambiguous, then this Court would be persuaded to grant the high deference appropriate in review and uphold the award. If the arbitration decision could be read as interpreting "termination," as the union argues, then this Court would have to find it enforceable. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597–98, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). However, the arbitrator's decision is not ambiguous. In fact, arbitrator Howlett makes it very clear that he is relying on a statutory breach in making his award. At page 45 of his award Howlett states: "The award will uphold the grievance, as the notice was void because of Roadmaster's breach of the statute. For this reason, the contract is extended for the year terminating February 28, 1987." There is nothing in the arbitrator's decision which

1. The relevant part of Section 8(d) reads as follows:

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering em-

ployees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications; ... (3) ... (4)....

would indicate that he found the intent of the parties was to include the requirements of Section 8(d) of the NLRA in Article 34 of the collective bargaining agreement.

The intent of arbitrator Howlett to rely on a statutory breach as grounds for his award is even more clear in light of the extent to which he attempts to support his position.[2] Howlett maintains that an arbitrator's power with respect to the NLRA has been recognized consistently by the National Labor Relations Board. In support he cites to the NLRB cases of *Spielberg Manufacturing Co.*, 112 NLRB 1080, 36 LRRM 1152 (1952) and *Collyer Insulated Wire Co.*, 192 NLRB 837, 77 LRRM 1931 (1971). Calling this case a *Collyer* type case, where the NLRB defers to an ongoing arbitration involving mixed questions of contract and law, he then cites to a previous arbitration award, *Sam Garvin Co.*, 58 LA 1 (1971), where he decided the case under the NLRA and did not reach the contractual issue. For good measure Howlett cites as well to a position paper he presented before the National Academy of Arbitrators as well as a paper taking a contrary viewpoint. (*See* Howlett, *The Arbitrator, The NLRB and The Courts*, Proceedings of the 20th Annual Meeting of the National Academy of Arbitrators, p. 67. *But see,* Meltzer, *Ruminations about Ideology, Law and Labor Arbitrator*, Proceedings of the 20th Annual Meeting of the National Academy of Arbitrators, p. 1.)

It is apparent that arbitrator Howlett felt that he was empowered with the ability to reach his decision by utilizing the requirements of the NLRA. However, Howlett was wrong. Why this situation differs from the *Collyer* NLRB decision and his own award in the *Garvin* arbitration is readily apparent. In those cases there was a complaint or petition put before the NLRB at the same time the issues were before an arbitrator. This is important because though the NLRB deferred, it retained the power to review any interpretation of the NLRA made by the arbitrator. Howlett points out that very fact in his *Garvin* award. *Garvin* at 2. In this case, the union never went to the NLRB complaining of a Section 8(d) violation. Therefore, Howlett's determining a violation of the NLRA and his remedy for the violation stands unchecked. As the Supreme Court has stated, the arbitral process is not equipped to adequately determine federal statutory rights. *McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 289–91, 104 S.Ct. 1799, 1802–03, 80 L.Ed.2d 302 (1984). An arbitrator's invocation of the NLRA cannot stand unchecked by the NLRB or the federal courts.

It may seem unfair or inefficient to vacate an arbitration award which, though lacking authority to invoke, does properly point to a violation of the NLRA. But the remedy fashioned by arbitrator Howlett for violation of Section 8(d) is somewhat extreme and not necessarily what the NLRB or a federal court would have affixed as proper for an 8(d) violation. Howlett has awarded a one year rollover of the contract. There is every indication that if the union sought to enforce such an award the company would be forced to liquidate.[3] It is unlikely that the NLRB would fashion such a possibly harsh remedy for a violation which was not without arguable reason.[4] Therefore, that portion of the arbitration award must be vacated.

## CONCLUSION

Roadmaster gave notice of its intent to terminate the contract as required by Article 34. Local 504 filed a grievance because it felt that Article 34 was still violated in some manner. The arbitrator did not agree

---

2. Though the union has not specifically relied on the analysis and cases cited by Howlett in defense of his position, reference to his theorization helps enlighten as to why he believed he could rely on a statutory breach.

3. Howlett even warns the union of possible devastating results if his award was enforced in full. Howlett Award at 46.

4. Without going into great detail, there is some possible merit in the company's contention that they did not know which union was entitled to an offer to bargain. However, there is a complicated set of factual circumstances which surround the issue and the union is not without strong counter-contentions.

with the union, rather he found that Road-master had violated the NLRA. He then fashioned a remedy for the statutory breach as if the company had breached the contract.

In the latest Seventh Circuit case, Judge Posner reiterated the key question in these matters.

> As we have said too many times to want to repeat again, the question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.

*Hill v. Norfolk and Western Railway Co.*, 814 F.2d 1192, 1194–95 (7th Cir.1987). In this instance, the arbitrator did not interpret the contract. The arbitrator invoked federal legislation instead. When an arbitrator bases his award on his view of legislative requirements, he has exceeded the scope of submission. *United Steel-workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Accordingly, plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED. That portion of the arbitration award in American Arbitration Association case No. 51 300 0257 86R finding in favor of Local 504 on the Termination of the Contract or Rollover Grievance is hereby ORDERED VACATED. The parties are ORDERED back before Arbitrator Robert G. Howlett for his determination of the amounts owing to Local 504 by Roadmaster on the remaining portions of his award. That amount is to be determined in light of this Court's ruling and the monies already ordered paid by Roadmaster to Local 504 by District Judge William D. Stiehl.

IT IS SO ORDERED.