In re Albert Tim–Ho TAM, Debtor.

Wallis F. SWANSON, Individually and as Trustee; Sheri and Robert Martin, Husband and Wife; and Kay Swanson, Plaintiffs,

v.

Albert Tim–Ho TAM, Defendant.

Bankruptcy No. 90–21846–7.
Adv. No. 91–6038.

United States Bankruptcy Court, D. Kansas.

Jan. 28, 1992.

Todd W. Ruskamp, Kansas City, Mo., Matthew D. Keenan, Overland Park, Kan., Robert L. Nefsky, Lincoln, Neb., for plaintiffs.

Carl R. Clark, Overland Park, Kan., J. Michael Dryton, Craig T. Limbocker, Kansas City, Mo., for defendant.

Henry W. Green, Leavenworth, Kan., Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the July 29, 1991 hearing on plaintiffs' motion for summary judgment. The motion arises out of plaintiffs' complaint to determine dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Wallis F. Swanson, Sheri and Robert Martin, and Kay Swanson (hereinafter collectively referred to as "plaintiffs") appeared by and through their attorney, Robert F. Nefsky. Albert Tim–Ho Tam (hereinafter "debtor") appeared in person and by and through his attorney, J. Michael Dryton. There were no other appearances.

### FINDINGS OF FACT

Based upon the pleadings, the record and the stipulations of the parties, this Court finds as follows:

1. That on June 15, 1988, plaintiffs filed a lawsuit (the "Lawsuit") against debtor-defendant and Drexel Burnham Lambert, Incorporated (hereinafter "DBL") in the United States District Court for the District of Nebraska (the "District Court") under filing number 88–L–323. The Lawsuit sought damages against debtor and DBL based on their alleged violations of the Securities Acts of Nebraska, Missouri and New York; the common law of fraud in Nebraska and Missouri; the Securities

Act of 1933; the Exchange Act of 1934; the Commodity Exchange Act; and, alternatively, the common law of contracts in Nebraska and Missouri. An Amended Complaint filed in the District Court added the allegation that debtor and DBL violated the Racketeer Influenced and Corrupt Organizations Act.

2. That on November 14, 1988, pursuant to the debtor's and DBL's request, the District Court ordered that plaintiffs' claims arising under state law be submitted to arbitration. The District Court retained jurisdiction over plaintiffs' claims under the Securities Act of 1933; the Exchange Act of 1934; the Commodity Exchange Act; and the Racketeer Influenced and Corrupt Organizations Act. The District Court ordered that the arbitration and the Lawsuit proceed simultaneously.

3. That on or about July 3, 1989, plaintiffs commenced arbitration proceedings against debtor and DBL with the New York Stock Exchange, Inc. as ordered by the District Court.

4. That commencing December 12, 1989, and continuing through May 22, 1990, twelve days of arbitration hearings were held in Omaha, Nebraska before a New York Stock Exchange, Inc. arbitration panel. All parties presented evidence. All parties and their counsel were given adequate notice of each hearing. Both debtor and/or his counsel were physically present at all arbitration hearings except those held during the afternoon of March 14, 1990, and March 15 and 16, 1990.

5. That on May 29, 1990, DBL filed for relief under Chapter 11 of Title 11, United States Code, and all proceedings against DBL in the Lawsuit and the arbitration were stayed at that time. The arbitration however continued against debtor. At the time of DBL's bankruptcy filing, all arbitration hearings had been completed. The only substantive matters before the arbitration panel at the time of DBL's bankruptcy were the submission of briefs, the rendering of a decision, and consideration of an award to Plaintiffs of their attorneys' fees.

6. That on July 30, 1990, the New York Stock Exchange, Inc. arbitration panel entered its award in favor of plaintiffs and against debtor, awarding monetary damages to plaintiffs in the amount of $460,537.16, as follows:

| | | |
|---|---|---|
| a. | To plaintiff Wallis Swanson: | $ 57,000 |
| b. | To plaintiffs Sheri and Robert Martin: | $ 87,000 |
| c. | To plaintiff Kay Swanson: | $ 19,000 |
| d. | To plaintiffs collectively as attorneys' fees and costs: | $297,537.16 |

7. That on October 26, 1990, the District Court confirmed the arbitration award and awarded monetary damages to plaintiffs identical to that awarded by the arbitration panel. The District Court's judgment against debtor was made pursuant to plaintiffs' application under Section 9 of the federal Arbitration Act, 9 U.S.C. § 9.

8. That on October 29, 1990, debtor filed for relief under Chapter 7 of Title 11, United States Code.

9. That debtor had actual notice of all proceedings in the District Court wherein the arbitration award was confirmed and judgment entered against debtor; debtor acknowledged in writing that he had actual notice of the October 4, 1990 evidentiary hearing; and that he had the right to be represented by an attorney in those proceedings.

10. That on February 12, 1991, plaintiffs filed a Complaint to Determine Dischargeability of a Debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).

11. That plaintiffs filed a Motion for Summary Judgment on May 28, 1991. A hearing was held on July 29, 1991, at which time the Court sustained the plaintiffs' Motion for Summary Judgment on plaintiffs' complaint to determine dischargeability

pursuant to § 523(a)(2)(A) with regard to all the amounts due to plaintiffs with the exception of attorneys' fees. Upon the filing of supplemental briefs and stipulations by the parties, the Court took the matter under advisement with regard to the issue of attorneys' fees. However, the Court indicated that its decision with regard to the motion for summary judgment was subject to change at the time the Court issued its opinion regarding the attorneys' fees.

## CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure governs summary judgments, and is made applicable to bankruptcy adversary proceedings by Fed.R.Bankr.P. 7056. Rule 56 provides that the court must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. "In determining whether any genuine issues of material fact exist, the record must be construed liberally in favor of the party opposing the summary judgment." *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citations omitted).

Plaintiffs are asserting in their motion for summary judgment that the question of whether debtor perpetrated actual fraud on plaintiffs, determined in accordance with the standards of the United States Bankruptcy Code, was actually litigated before the arbitration panel and necessary to its award, that there is no genuine question of fact, and that plaintiffs are therefore entitled to summary judgment as a matter of law. Plaintiffs' motion is based on their claim under § 523(a)(2)(A) and does not assert that summary judgment is appropriate with regard to their claim under § 523(a)(4). The Court must therefore determine whether the doctrine of collateral estoppel applies in the present case, and if so, whether any issues are precluded from relitigation.

Debtor argues that although the Supreme Court has not considered whether an arbitration award is entitled to collateral estoppel effect in non-dischargeability proceedings, the Supreme Court has refused to permit arbitration awards to preclude a party's ability to protect important federal interests in cases brought under different federal statutes. Debtor then cites *McDonald v. West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

In *McDonald v. West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Supreme Court addressed the issue of whether an arbitration decision dismissing a policeman's claim had collateral estoppel effect under 28 U.S.C. § 1738 in a subsequent case brought by the policeman under 42 U.S.C. § 1983. The Supreme Court first addressed the issue of whether federal courts are obliged by statute to accord res judicata or collateral estoppel effect to an arbitrator's decision. *Id.* at 287, 104 S.Ct. at 1801. The Court looked at the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, and found that arbitration decisions are not subject to the mandate of § 1738. *Id.* The Court quoted § 1738, emphasizing its language: *"judicial proceedings* [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken." *Id.* at 287–88, 104 S.Ct. at 1801–02 (emphasis in original). The court determined that arbitration is not a "judicial proceeding" and therefore § 1738 does not apply to arbitration awards. *Id.* at 288, 104 S.Ct. at 1802.

However, the Court in *McDonald* went on to state that "[b]ecause federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned." *Id.* The court then went on to determine whether it was appropriate in *that* case to fashion such a rule. *Id.* The

Court held that because 42 U.S.C. § 1983 creates a cause of action, there is no question that Congress intended it to be judicially enforceable, and arbitration "cannot provide an adequate substitute in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *Id.* at 290, 104 S.Ct. at 1803.

In *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 216, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985), the Supreme Court held that the courts could compel the arbitration of a pendent state law claim when the federal court will in any event assert jurisdiction over the federal law claim. In addressing the concern that findings in an arbitration proceeding might have collateral-estoppel effect in a subsequent federal proceeding to resolve securities claims, the Court cited *McDonald* as an example that courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding. *Id.* at 223, 105 S.Ct. at 1243. The Court went on to state that the "question of what preclusive effect, if any, the arbitration proceedings might have is not yet before us, however, and we do not decide it." *Id.* The Court noted that in framing preclusion rules in this context, courts shall take into account the federal interests warranting protection. *Id.*

In the present case, the federal interest involved is the interest in providing a debtor with a discharge of his debts. In *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991), the Supreme Court clarified that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a). The Supreme Court in *Grogan* also stated that "[w]e have previously held that a debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy ... [w]e also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof." *Id.* 111 S.Ct. at 659.

The Court in *Grogan* was not persuaded that the clear-and-convincing standard is required to effectuate the "fresh start" policy of the Bankruptcy Code, and noted that the Code limits the opportunity for a fresh start to the "honest but unfortunate debtor." *Id.* (citations omitted). The Court then held that the preponderance-of-the-evidence standard of proof shall apply to the dischargeability exceptions in 11 U.S.C. § 523(a), noting that this standard will permit exceptions from discharge of all fraud claims creditors have successfully reduced to judgment. *Id.* 111 S.Ct. at 661. The Court also noted that the 1898 Bankruptcy Act provided that "judgments" sounding in fraud were exempt from discharge, and the 1903 revisions substituted the term "liabilities" for "judgments" with the intention of broadening the coverage of the fraud exceptions. *Id.*

The Supreme Court in *Dean Witter, supra,* acknowledged that the Courts must frame preclusion rules in light of the federal interest sought to be protected. In light of the rationale set forth in *Grogan,* this Court finds that it would be appropriate in the present case to give collateral estoppel effect to the arbitration award which was subsequently confirmed by the United States District Court for the District of Nebraska.

■ Collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment. *In re Wallace,* 840 F.2d 762, 765 (10th Cir.1988) (citations omitted).

The plaintiffs' *Statement of Claim* before the arbitration panel refers to and attaches plaintiffs' Amended Complaint and states that plaintiffs are submitting to arbitration only those causes of action that the District Court ordered to arbitration. The arbitration panel specifically awarded the plaintiffs their attorneys' fees as part of the award. The Missouri and Nebraska Securities Acts provided the only basis on which the arbitration panel could have

awarded plaintiffs' attorneys' fees.[1] In *In re Maxwell*, 51 B.R. 244, 246 (Bankr. S.D.Ind.1983), the Court held that "[g]iven the limited circumstances which would give rise to punitive damages and attorney fees under Indiana law and the fact that the Marion County Court did award same to plaintiffs, it is clear that the state court made the determination that the debtor/defendants' actions amounted to fraud and willful and malicious injury to property."

In the present case, some of the issues sought to be precluded from relitigation were the same issues necessarily decided by the arbitration panel in establishing debtor's violation of the Missouri or Nebraska Securities Acts. The Missouri Act provides that:

> Any person who ... offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him ...

MO.ANN.STAT. § 409.411(a)(2) (Vernon 1991). The provision of the Nebraska Act has substantially the same wording. *See* NEB.REV.STAT. § 8–1118(1) (1990).

■ The elements of § 523(a)(2)(A) are: (1) The debtor knowingly committed actual fraud, false representations, or false pretenses; (2) the debtor intended to deceive the plaintiffs; (3) the plaintiffs reasonably relied upon the debtor's conduct; and (4) the reliance proximately caused damage to plaintiffs. *In re McClure*, 99 B.R. 66, 68 (Bankr.D.Kan.1986) (citing *In re Ridgway*, 24 B.R. 780 (Bankr.D.Kan.1982)).

The Court finds that the first and second elements required under § 523(a)(2)(A) were not necessarily addressed in the prior action. Based on the pertinent language in the Securities Acts, it appears that the award could have been based on a finding of negligence, rather than intentional fraud. The statutes provide that a defendant is liable upon failure to prove that he did not know, and *in the exercise of reasonable care could not have known*, of the untruth or omission. (Emphasis added).

■ Section 523(a)(2)(A) includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality. *In re Novak*, 97 B.R. 47, 56 (Bankr.D.Kan.1987) (citations omitted). Although "an intent to deceive may be inferred from a knowingly made false statement," *In re McClure*, 99 B.R. at 69, the decision in the prior action was not necessarily based on a finding that debtor "knowingly" made a false statement. It appears that debtor could have been found liable under the Securities Acts based on a finding that debtor did not know of the untruth or omission, but in the exercise of reasonable care could have known. Thus, such a finding would not establish the element of knowingly committing actual fraud or intent to deceive as required by § 523(a)(2)(A).

■ The Court finds that the third and fourth elements required under § 523(a)(2)(A) involve the same issues which were actually litigated by the parties in the prior action. The Securities Acts violations are based on a finding that the defendant made an untrue statement of a material fact or an omission to state a material fact. A misrepresentation is "material" where it would likely affect the conduct of a reasonable person with reference to the transaction in question. *Pasko v. Trela*, 153 Neb. 759, 46 N.W.2d 139 (1951); *Best v. Culhane*, 677 S.W.2d 390 (Mo.Ct. App.1984). The combination of materiality, the plaintiffs' lack of knowledge of the untruth or omission, and the fact that the

---

1. *See* MO.ANN.STAT. § 409.411(a)(2) (Vernon 1991); NEB.REV.STAT. § 8–1118(1) (1990). Defendant admits that the agreements involved do not provide for the payment of attorneys' fees. *See Williams v. Gulf Coast Collection Agency Co.*, 493 S.W.2d 367 (Mo.Ct.App.1973) (Attorneys' fees cannot be recovered as damages in absence of statutory authority or a contract provision).

securities were sold "by means of" a misstatement or omission, established that plaintiffs reasonably relied on debtor's conduct.

The prior action also established that the reliance proximately caused damage to plaintiffs. The arbitration panel awarded damages to each of the plaintiffs. This calculation of damages may not be collaterally attacked in the bankruptcy court. *In re Tsamasfyros*, 940 F.2d 605, 608 n. 4 (10th Cir.1991).

■ These two issues, which establish the third and fourth elements required under § 523(a)(2)(A), were the same issues actually litigated by the parties in the prior action and the determination of each issue was necessary to the resulting final and valid judgment. A judgment approving an arbitration award should be accorded the same finality as any other judgment properly entered. *See In re McNabola*, 43 B.R. 362, 363 (Bankr.N.D.Ill.1984); *See also In re B-K of Kansas, Inc.*, 69 B.R. 812, 814 (Bankr.D.Kan.1987) (Issues were already litigated in arbitration and Court accepted arbitration award as final).

■ Debtor argues that he was not represented by counsel during portions of the arbitration proceedings. The Court rejects any suggestion that because debtor appeared pro se in the prior action collateral estoppel is inappropriate. *See In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir.1991). The debtor cannot complain that he was denied a full and fair opportunity to present his case or litigate the relevant issues. The arbitration panel gave debtor a complete opportunity to present his defense to plaintiffs' claims. The arbitration hearings consumed twelve days over a six month period and the arbitration panel permitted the debtor to submit evidence obtained from discovery in the Lawsuit in support of his case.

■ Rule 56(d) of the Federal Rules of Civil Procedure provides that the Court shall, if practicable, ascertain what material facts exist without substantial controversy and direct such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly. Fed.R.Civ.P. 56(d); Fed.R.Bankr.P. 7056. Therefore, this Court finds that under the principle of collateral estoppel, debtor is precluded from relitigating the issues relating to reasonable reliance or damages in his dischargeability action. However, plaintiffs must still prove that (1) the debtor knowingly committed actual fraud, false representations, or false pretenses; and (2) the debtor intended to deceive the plaintiffs.

Plaintiffs also assert that the attorneys' fees awarded in the prior action are nondischargeable if the underlying judgment is nondischargeable. The Court will refrain from deciding this issue until the nondischargeability of the underlying judgment is decided. Plaintiffs have also requested reasonable attorneys' fees and costs in the prosecution of this dischargeability action. The Court will likewise refrain from deciding this issue at this time.

IT IS THEREFORE, BY THE COURT, ORDERED That plaintiffs' motion for summary judgment be and the same is hereby DENIED in part and SUSTAINED in part as set out above.

IT IS FURTHER, BY THE COURT, ORDERED That under the principle of collateral estoppel, debtor is precluded from relitigating the issues relating to reasonable reliance or damages in his dischargeability action.

IT IS FURTHER, BY THE COURT, ORDERED That the Clerk of the U.S. Bankruptcy Court is directed to set this matter for trial on pending issues consistent with the Court's ruling in this opinion.

This Memorandum shall constitute my findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.