**ROADMASTER CORPORATION,**
**Plaintiff–Appellee,**

v.

**PRODUCTION AND MAINTENANCE EMPLOYEES' LOCAL 504, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Defendant–Appellant.**

No. 87–1574.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1988.

Decided July 1, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 15, 1988.

Theodore T. Green, Connerton & Bernstein, Washington, D.C., for plaintiff-appellee.

David F. Loeffler, Krukowski & Costello, S.C., Milwaukee, Wis., for defendant-appellant.

Before FLAUM, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Roadmaster Corporation ("Roadmaster") brought this suit in the district court to vacate an arbitration award in favor of the Production and Maintenance Employees' Local 504 ("Local 504"). The district court granted Roadmaster's motion for summary judgment and vacated the arbitration award, 655 F.Supp. 1460. Local 504 appeals that decision. The issue presented is whether an arbitrator, when resolving a grievance arising under a contract, may consider outside "positive law" in making his decision. We hold that, absent contractual authority to the contrary, an arbitrator may not so rely upon positive law. Therefore, we affirm the district court.

## I.  BACKGROUND

Roadmaster operates a bicycle manufacturing plant in Olney, Illinois. The employees at this plant were covered by a collective bargaining agreement and were represented by the United Employees' Union Number One. The term of this agreement was from December 1, 1982 through February 28, 1986.

In 1985, a strike resulted from Roadmaster's request for wage concessions. Two items of significance occurred during this strike. First, Roadmaster hired over 500 permanent replacement employees. Second, the membership of the United Employees' Union Number One voted to merge with Local 771 of the Laborers' International Union of North America. Before the merger was finalized, the officers from both unions informed Roadmaster that they would accept Roadmaster's most recent offer.

Roadmaster replied that the unions' employees had been replaced permanently and therefore were not entitled to return to work. Subsequently, the members of United Employees' Union Number One voted to form their own local affiliated with the Laborers' Union. This local was chartered as Local 504, the appellant herein.

Roadmaster refused to recognize Local 504 due in part to confusion over which union actually represented Roadmaster's employees.[1] Roadmaster wanted the collective bargaining agreement to terminate on February 28, 1986, the last effective date of the contract. The contract, however, contained a "rollover" provision in Article 34 that read:

### DURATION

A.  This Agreement made and entered into and executed at Olney, Illinois, shall remain in full force and effect as of December 1, 1982, and terminating at 12 o'clock midnight February 28, 1986. This Agreement shall continue in full force from year to year thereafter, unless either party desiring to amend or terminate this Agreement shall serve upon the other party written notice, by certified mail, at least sixty (60) days prior to the date it desires to amend or terminate the Agreement.

---

1. At that point, this court had issued the decision in *United Retail Workers Union Local 881 v. NLRB,* 774 F.2d 752 (7th Cir.1985). *Local 881* made reference to an issue for which *certiorari* had been granted: whether an election by a local union upon the decision to affiliate with an international had to be open to all bargaining unit members or only to union members.

*Financial Inst. Employees Local No. 1182 v. NLRB,* 752 F.2d 356 (9th Cir.1984), *aff'd,* 475 U.S. 192, 106 S.Ct. 1007, 1014, 89 L.Ed.2d 151 (1986) ("[T]he Board exceeded its statutory authority by requiring that nonunion employees be allowed to vote in the union's affiliation election.").

Consistent with Article 34, Roadmaster sent a letter dated December 16, 1985 to all three unions. This letter stated:

Pursuant to Article 34 of the current collective bargaining agreement between United Employees Union Local No. 1 and Roadmaster Corporation, and pursuant to Section 8(d) of the National Labor Relations Act, this letter constitutes notice of the intent of Roadmaster Corporation to terminate the collective bargaining agreement between Roadmaster Corporation and United Employees Union Local No. 1 at 12 o'clock midnight, February 28, 1986.

This letter and notice is not to be construed as recognition of Production and Maintenance Employees Local 504 as the collective bargaining representative of the Production and Maintenance Employees at Roadmaster Corporation. Further, this notice does not constitute a waiver and is without prejudice of any rights the employer has or may have to assert that Production and Maintenance Employees Local 504 is not the collective bargaining representative of Roadmaster Corporation's Production and Maintenance Employees under the National Labor Relations Act. This notice is given solely for purposes of terminating the collective bargaining agreement set to expire at 12 o'clock midnight, February 28, 1986.

Letter to Local 504 (Dec. 16, 1985), *quoted in* Award of Arbitrator at 12.

Roadmaster refused to bargain with anyone concerning any possible new contract. Local 504 filed an action in the district court seeking to compel Roadmaster to arbitrate numerous issues. That request was granted. One of the arbitration issues concerned whether the December 16, 1985 letter effectively defeated the collective bargaining agreement's "rollover" provision. The arbitrator held that the December 16, 1985 letter was void because Roadmaster violated Section 8(d)(2) of the National Labor Relations Act, 29 U.S.C. § 158(d)(2) ("NLRA"), because Roadmaster had refused to bargain with any of the unions. Thus, the arbitrator held that the "rollover" provision renewed the collective bargaining agreement's terms for another year.

Roadmaster filed this suit in the district court to vacate the arbitration award. Roadmaster then filed a motion for summary judgment which was granted. Local 504 appeals that judgment to this court.

## II. *ANALYSIS*

This case presents a straightforward issue of an arbitrator's authority. In 1974, Justice Powell, writing for the unanimous Court, set forth the controlling law in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). With regard to the arbitrator's role, he stated:

His source of authority is the collective-bargaining agreement, and he must interpret and apply that agreement in accordance with the "industrial common law of the shop" and the various needs and desires of the parties. *The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties:*

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers · of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

*If an arbitral decision is based "solely upon the arbitrator's view of the requirements of enacted legislation,"* rather than on an interpretation of the collective-bargaining agreement, *the arbitrator has "exceeded the scope of the submission," and the award will not be enforced. Ibid.*

415 U.S. at 53, 94 S.Ct. at 1022 (emphasis added). Subsequent Supreme Court decisions have reinforced the import to be accorded these words. *See McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 290–91, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 744, 101 S.Ct. 1437, 1446–47, 67 L.Ed.2d 641 (1981). *See also Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir.1987) ("A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the

contract and implement their own notions of what is reasonable or fair."); *Johnson v. University of Wisconsin–Milwaukee*, 783 F.2d 59, 62 (7th Cir.1986).

In the case before us, the arbitrator unmistakably went beyond the terms of the contract to reach the result set forth in his opinion.[2] Solely because Roadmaster breached Section 8(d)(2) of the NLRA, Roadmaster's letter of December 16, 1985 to the union was deemed to constitute insufficient notice under Article 34. In his award, the arbitrator stated:

> The notice of termination—to reiterate— failed to comply with the clear and unambiguous statutory requirement that Roadmaster offer to bargain with the representative of its production and maintenance employees.

Award of Arbitrator at 38. The arbitrator then went on to state that even though the language of Article 34 was not ambiguous, the contract language was "subject to the requirements of the National Labor Relations Act, including Section 8(d)." *Id.* at 42. Then, advancing his view of his authority, the arbitrator indicated that in his opinion he was not only authorized, but required, "to apply applicable law in deciding issues in arbitration cases." *Id.* at 45. The arbitrator further claimed that the National Labor Relations Board ("NLRB") specifically condoned an arbitrator's invoking the NLRA when arbitrating contract disputes, relying upon *Collyer Insulated Wire Co.*, 192 NLRB Dec. (CCH) 837, 77 L.R.R.M. (BNA) 1931 (1971).[3]

The arbitrator cast no doubt upon what he was doing. And he was plainly wrong. He based his decision not upon the parties' bargain, but rather upon his "view of the requirements of enacted legislation." Thus, he has " 'exceeded the scope of the submission' and the award will not be enforced." *Gardner–Denver*, 415 U.S. at 53, 94 S.Ct. at 1022 (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361). The district court acted properly when it set aside this arbitration award.

### III.  CONCLUSION

The arbitrator clearly went beyond considering the contract's terms to consider outside "positive" law, the NLRA. Resolution of NLRA disputes must be left to the NLRB and not to an arbitrator. When a contract, such as the one involved here, specifically limits an arbitrator's subject matter jurisdiction, the arbitrator should restrict his consideration to the contract, even if such a decision conflicts with federal statutory law. *McDonald*, 466 U.S. at 291, 104 S.Ct. at 1803; *Gardner–Denver*, 415 U.S. at 57, 94 S.Ct. at 1024. *Compare Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2335, 2337–46, 96 L.Ed.2d 185 (1987) (arbitrator allowed to resolve rights under the Sherman Act when the contract ambiguously empowered the arbitrator to adjudicate "any controversy arising out of or relating to ... [trading] accounts or to [the brokerage] agreement"); *Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (arbitrator permitted to resolve rights under the Securities Exchange Act of 1934 and RICO when the contract broadly empowered the arbitrator to adjudicate "all disputes controversies, [and] differences which may arise" in performance of an automobile dealer-franchise contract).

The district court correctly set aside the arbitration award, and its judgment is AFFIRMED.

---

2. Article 23 of the Agreement provides in relevant part:
   (b) In considering whether a matter is subject to arbitration as a matter of right, and in considering the case on its merits, and in interpreting and applying the provisions of this Agreement, it is mandatory that the arbitrator shall be guided by the fundamental principle that the Company retains all rights to manage its business including but not limited thereto, those specifically retained in this Agreement, unless modified or restricted by a specific provision in this Agreement.
   (c) The arbitrator shall not have the power to add or subtract from any of the terms of this Agreement....

(d) [N]one of the provisions of this Agreement shall deprive a court of its power to determine questions of arbitrability or the jurisdiction of an arbitrator or the validity of any decision or award of the arbitrator.

3. The NLRB's decision in *Collyer*, of course, was issued before the Supreme Court ruling in *Gardner–Denver*. Also, the district court observed, and we agree, that in *Collyer*, as opposed to this case, there was also a complaint or petition filed with the NLRB concurrent with the arbitration request. In *Collyer*, the NLRB, while deferring to the arbitrator, retained the power to review the arbitrator's decision.