**POLK BROTHERS, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT), Defendant–Appellant–Cross–Appellee.**

No. 90–3812.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1992.

Decided Aug. 28, 1992.

---

Marc R. Jacobs, Elaine S. Fox (argued), D'Ancona & Pflaum, Robert A. Kohn, Gottlieb & Schwartz, Chicago, Ill., for plaintiff-appellee.

Paul L. Glover (argued), Chicago, Ill., for defendant-appellant.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

On June 1, 1987, Polk Brothers' distribution center at Melrose Park was completely destroyed by fire. Prior to the fire, the distribution center had played a crucial role in Polk Brothers' merchandising business. The distribution center had contained virtually all of Polk Brothers' inventory for furniture, carpeting, and appliances, and also housed its delivery trucks and loading docks. As a result of the fire, Polk Brothers permanently laid off 163 employees who had been employed at the Melrose Park center.

The company's management had considered several alternatives to laying off the workers who had been employed at the Melrose Park facility, but these methods proved inefficient and costly. One of the interim methods of delivery proved impractical because it required Polk Brothers' trucks to cover large geographic areas. Another method, which required the suppliers to deliver merchandise directly to Polk Brothers' customers, also proved unsuccessful because the suppliers often did not have adequate warehousing facilities in the Chicago area. Polk Brothers' decision to use outside suppliers for its carpet sales also proved inefficient because its installers were required to travel to three separate warehouses to pick up carpet and supplies.

Polk Brothers also considered rebuilding the Melrose Park center but rejected that option because it was too costly. Instead, Polk Brothers chose to contract with third party carriers to provide warehousing and home delivery. On July 30, 1987, Polk Brothers and Merchants Home Delivery Service, Inc. ("Merchants") executed a distribution services agreement, which gave Merchants the exclusive right to assume Polk Brothers' warehousing and distribution operations for a five-year period. On August 12, 1987, Polk Brothers entered into an agreement with Crosstown Home Deliveries, Inc. ("Crosstown") under which Crosstown would store and deliver certain other appliances. On August 20, 1987, Polk Brothers, which had begun to lay off workers after the fire, terminated its remaining workers and ceased all home delivery operations.

In response to the permanent layoffs, the Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) ("Union") filed grievances with Polk Brothers, claiming that the decision to contract with Merchants violated the terms of three collective bargaining agreements, which covered the employees who were employed at the Melrose Park distribution center. The three agreements covered 102 drivers and helpers ("Drivers Agreement"), 54 warehouse workers ("Warehouse Agreement"), and 7 furniture refinishers ("Refinishers Agreement"). Pursuant to the agreements, an arbitrator heard the dispute.

Shortly after an arbitration hearing, held in November 1987, the Union requested negotiations with Polk Brothers to reach successor agreements. On January 11, 1988, Polk Brothers notified the Union that it would not enter into any successor agreements to the three collective bargaining agreements which were scheduled to terminate, by their own terms, on March 31, 1988.[1] In post-hearing briefs, the Union then informed the arbitrator that Polk Brothers had refused to extend the collective bargaining agreements.

In April 1988, the arbitrator issued his award. He held that:

1) Polk Brothers' contracts with Merchants and Crosstown violated the "transfer of operations" (Article I) and "subcontracting" (Article 13) clauses of the Drivers Agreement and the "successor" clause (Article XIX, § 2) of the Refinishers Agreement.

2) Polk Brothers violated its implied obligation of good faith and fair dealing under the Warehouse Agreement by subcontracting its carpet warehousing operations to Merchants. In all other respects, Polk Brothers did not violate the Warehouse Agreement.

3) Polk Brothers must reinstate all drivers, helpers and furniture refinishers who were in its employ on June 1, 1987, and the same number of warehousemen employed in its carpet operations as of June 1, 1987.

4) Polk Brothers must make these employees whole for all wages and other

1. The Refinishers Agreement had terminated on March 31, 1987, but the parties agree that it was still in effect in August 1987 when Polk Brothers terminated the workforce of the Melrose Park Center. The district court upheld the award of backpay to employees covered by the Refinishers Agreement until March 31, 1988, which effectively treated the Refinishers Agreement as terminating on that date. Neither party questions that determination. Moreover, the Union has not argued that the employees covered by the Refinishers Agreement should be treated any differently than employees covered by the Drivers and Warehouse Agreements. We have therefore treated all of the agreements as terminating on March 31, 1988.

benefits lost as of June 19, 1987, for the warehouse employees and July 30, 1987, for the truck drivers and helpers and the furniture refinishers.

Polk Brothers then brought this action pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to set aside and vacate a portion of the arbitrator's award. In the suit, Polk Brothers challenged the remedy portion of the award which granted reinstatement to all drivers, helpers and furniture refinishers who were employed by Polk Brothers on June 1, 1987, and extended backpay to these workers beyond March 31, 1988. Second, Polk Brothers challenged the portion of the arbitrator's decision which held that it violated the Warehouse Agreement by contracting with Merchants for its operation of a carpet facility.

In the district court, the parties filed cross motions for summary judgment. Polk Brothers argued that the arbitrator had exceeded his authority in awarding reinstatement and backpay beyond March 31, 1988, the termination date of the collective bargaining agreements. The Union responded that the arbitrator's award should be upheld because it drew its essence from the collective bargaining agreements and because the arbitrator correctly held that the terms of the agreements remained in effect beyond their expiration dates by operation of law.

The district court entered summary judgment in favor of Polk Brothers and against the Union because it ruled that in awarding benefits after the expiration date of the contract, the arbitrator exceeded his authority under the agreements.[2] 754 F.Supp. 608. Additionally, the district court rejected the suggestion that the award was properly based upon implied terms of the collective bargaining agreements. The district court reasoned that the agreements could not be read to grant the Union enforceable contract rights ex-

tending in perpetuity, to be altered only by future arbitration.

On appeal, the Union again argues that the award drew its essence from the collective bargaining agreements. According to the Union, the district court misinterpreted several provisions of the agreements, which in fact allowed the arbitrator to award benefits beyond the express termination dates of the contract.

■ We review the grant or denial of summary judgment *de novo.* *Pro–Eco, Inc. v. Board of Com'rs. of Jay County, Ind.*, 956 F.2d 635, 637 (7th Cir.1992); *Carston v. The County of Cook*, 962 F.2d 749, 751 (7th Cir.1992). Summary judgment is appropriate if we can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). In reviewing a district court's decision to grant summary judgment we "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990).

■ It is well settled that judicial review of arbitration awards is extremely limited. *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In *Enterprise Wheel,* the Supreme Court said that courts should generally refrain from reviewing the merits of an arbitration award under a collective bargaining agreement. 363 U.S. at 596, 80 S.Ct. at 1360. Arbitrators are generally in a unique position to settle disputes which "require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements." *Id.*, 363 U.S. at 596, 80 S.Ct. at 1360.

---

**2.** Polk Brothers did not challenge (and does not now challenge) the arbitrator's decision to award reinstatement and backpay up to March 31, 1988, the termination date of the agreements.

■ Nevertheless, in certain limited circumstances a federal court may review an arbitrator's award. As the *Enterprise Wheel* court stated:

> [A]n arbitrator is confined to the interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361. Even so, we have been hesitant to upset an arbitrator's award on the ground that the arbitrator's award did not draw its essence from the collective bargaining agreement. *See e.g., Ethyl Corp.*, 768 F.2d at 185. This circuit upholds an arbitrator's award based upon a misreading of the contract so long as the arbitrator's interpretation is derived from the language of the contract. *Id.* at 184. As we said in *Ethyl Corp.*, "[i]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence for the collective bargaining agreement.'" *Id.* at 185 (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361) (emphasis in original).

■ We resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award. *Id.* at 185, 187; *see also Alexander v. Gardner–Denver Company*, 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974) (holding that if an arbitrator's award is based solely upon his view of the requirements of enacted legislation, rather than upon his interpretation of the collective bargaining agreement, the arbitrator has exceeded the scope of his authority); *Roadmaster Corp. v. Prod. & Main. Emp. Local 504*, 851 F.2d 886 (7th Cir.1988).

■ The Union argues that the agreements gave the arbitrator the authority to

award reinstatement beyond their express termination dates. The Union points out that the collective bargaining agreements grant the arbitrator exclusive authority to render an appropriate remedy after the arbitrator finds that a provision of the agreements has been violated. Hence, the Union claims that the collective bargaining agreements do not restrict the arbitrators' authority to fashion an appropriate remedy.

A review of the arbitration provisions demonstrates that the Union is incorrect. The collective bargaining agreements expressly bar the arbitrator from modifying their provisions. The Drivers and Warehouse Agreements contained this provision:

> *The arbitrator shall have no power to add to, subtract from, modify or amend any provision of this Agreement,* change existing wage rates, or arbitrate proposals for the amendment or renewal of this agreement, unless otherwise agreed.

(Emphasis added). The Refinishers Agreement contained a similar provision:

> *The arbitrator shall have no power to determine arbitrarily nor to add to, subtract from, modify or amend any provision of this Agreement,* nor to substitute his discretion for the discretion of the Union or the Employer, change existing wage rates, or arbitrate proposals for the amendment or renewal of this Agreement.

(Emphasis added.)

The Union then argues that these provisions limit the arbitrator's authority when determining whether an agreement's terms have been violated, but that they do not limit his authority when determining an appropriate remedy. After reviewing the arbitration provisions, we cannot agree with the Union. The provisions which limit the arbitrator's authority follow, in order, other provisions which establish a method for selecting an arbitrator, and state that the arbitrator's decision shall be binding upon the parties. There can be no doubt that the limitation provisions restrict the

arbitrator's authority to fashion a remedy for a violation of the agreements.[3]

Next, the Union argues that the collective bargaining agreements contemplate that certain provisions will continue in effect beyond the expiration dates of the agreements. In fact, provisions of the Drivers Agreement and Warehouse Agreement provide for the payment by Polk Brothers of health, welfare and pension contributions during any period when the agreements are being renegotiated. Moreover, the Drivers Agreement and the Warehouse Agreement also provide that they may be modified only through notice from either the Company or the Union, within 60 days prior to the expiration date of the agreements. In the absence of notice, the agreements continue to renew on an annual basis. Under the Union's interpretation of these provisions, the agreements contemplate that they will be effective after their express termination dates.

We agree with the Union that the agreements contemplate that certain provisions will remain in effect after their express termination dates *when neither party has notified the other that it does not wish to renew.* The agreements expressly terminated on March 31, 1988 and the Union does not dispute that Polk Brothers complied with the notice provisions of the agreements. Although the agreements contemplate continuing health and pension contributions when the agreements are being renegotiated, they do not continue in effect in perpetuity even after one party has decided not to renew. If we were to accept the arbitrator's ruling, Polk Brothers would conceivably be required to pay the employees who once worked at the Melrose Park distribution center for many years.

Our decision in *Roadmaster* is instructive here. In *Roadmaster,* an arbitrator held that under the "rollover" provisions of a collective bargaining agreement, the agreement's terms were renewed for a year beyond the termination date of the contract. 851 F.2d at 888. We held that the arbitrator clearly went beyond the contract's terms because his ruling was based upon his opinion that the company had violated § 8(d)(2) of the National Labor Relations Act, 29 U.S.C. § 158(d)(2) ("NLRA"). *Id.* at 889. The Union insists that this case differs from *Roadmaster* because the arbitrator did not expressly rely upon a provision of the NLRA. According to the Union, the basis of the award is ambiguous and therefore, we must affirm the arbitrator's award.

We disagree. The district court noted that some of the language of the award is ambiguous, but it found that the arbitrator must have applied outside law in awarding reinstatement because the agreements have a defined termination date. Our review of the arbitrator's opinion reveals that he mentioned outside law in his opinion, although he did not expressly state what that law was. The arbitrator stated that:

> Indeed, inasmuch as all collective bargaining agreements at issue in this case have now expired, and continued terms and conditions of employment exist by operation of law, negotiations will be required in any event. By simply awarding reinstatement and a make whole remedy, I hope to provide the parties with sufficient latitude to work out the exigencies.

The arbitrator did not apparently base his award upon outside law but we cannot agree that the basis of the award is ambiguous, or that any ambiguity would allow the arbitrator to award reinstatement beyond the express termination dates of the agreements.

In sum, we agree with Polk Brothers that *Roadmaster* is controlling here. While the arbitrator in this case did not expressly state that he relied on a provision of the NLRA, it is clear that he went well beyond his authority under the agreements. We hold that the collective bargaining agreements did not allow the arbitrator to award reinstatement beyond their

**3.** The collective bargaining agreements did not contain clauses which required the parties to abide by established law or which otherwise permitted the arbitrator to look outside the four corners of the agreements.

express termination dates. Our holding is consistent with the decisions of several other circuits, which have struck down arbitrator's decisions which were contrary to contractual provisions. *See Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 945–46 (1st Cir. 1988); *Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674,* 916 F.2d 63, 65 (2d Cir.1990); *Delta Queen Steamboat Co. v. District 2, Marine Engineers Beneficial Ass'n,* 889 F.2d 599, 604 (5th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990) ("We agree with the company that the rule in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected."); *International Brotherhood of Electrical Workers, Local 429 v. Toshiba America, Inc.,* 879 F.2d 208, 210–11 (6th Cir.1989); *Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657,* 858 F.2d 1529, 1531 (11th Cir.1988).

We AFFIRM the judgment of the district court.