## COMPLETE AUTO TRANSIT, INC. Plaintiff,

v.

## CHAUFFEURS, TEAMSTERS and HELPERS LOCAL UNION NO. 414, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization, Defendant.

No. 1:93–cv–302.

United States District Court, N.D. Indiana, Fort Wayne Division.

Jan. 19, 1994.

---

Mark A. Garvin, Barnes and Thornburg, Fort Wayne, IN, R. Ian Hunter, Robert L. Mercado, Patricia M. Morrow, Dean and Fulkerson, Troy, MI, for Complete Auto Transit, Inc., a Michigan Corporation.

Joseph Christoff, Sr., Partner, Christoff and Christoff, Fort Wayne, IN, Edward J. Fillenwarth, Jr., Fred O. Towe, Indianapolis, IN, for International Broth. of Teamsters, Chauffers, Warehousemen & Helpers, Local Union No. 414.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's, Complete Auto Transit, Inc. (hereinafter: Complete), Motion for Summary Judgment filed on December 10, 1993. Complete asks this court to vacate an arbitration decision and award issued by a Board of Arbitration (hereinafter: the Board) on October 7, 1993, that determined a class grievance filed by defendant, Chauffeurs, Teamsters and Helpers Local Union No. 414, International Brotherhood of Teamsters (hereinafter: the Union), was meritorious. The Union filed its Answer, Counterclaim and Motion for Summary Judgment on December 10, 1993. The Union asks the court to uphold the decision and award of the Board. For the following reasons, Complete's Motion for Summary Judgment will be denied, and the Union's Motion for Summary Judgment will be granted.

## SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the

motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. Moreover, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

## FACTUAL BACKGROUND

The essential facts are not in dispute. Complete is a Michigan corporation with its principal office and place of business located in Troy, Michigan. Complete is a major automobile carrier engaged in the transportation of new automobiles to dealers across the country. Complete operates a terminal facility in Roanoke, Indiana.

The Union is the exclusive bargaining representative for Complete's garage employees at Complete's Roanoke, Indiana, terminal facility. Complete and the Union are parties to a collective bargaining agreement which includes the National Master Automobile Transporters Agreement and the Central and Southern Conference Area Supplemental Agreements (collectively, the Collective Bargaining Agreement or "CBA").

Complete opened its Roanoke, Indiana, facility in January 1987. From August 1987, to June 1991, Complete's garage employees worked in two shifts at the Roanoke facility. On June 17, 1991, Complete added a third shift to its garage at the Roanoke facility commencing at 11:30 p.m. on Monday and ending at 8:00 a.m. the following Saturday. On June 18, 1991, the Union filed a class grievance on behalf of the garage employees/mechanics protesting the third shift on the grounds that Complete had instituted a Tuesday through Saturday work week in violation of the CBA.

The grievance was processed through all stages of the grievance and arbitration procedures as set forth in Article 7 of the CBA and when the grievance was deadlocked by the National Joint Arbitration Committee, it was referred for determination to the Board in conformance with Article 7, Section 9 of the CBA.

On October 7, 1993, the Board issued its Report and Decision and Award. The Board found the grievance meritorious and allowed the grievance. Specifically, the Board found that Complete had instituted a Tuesday through Saturday work-week in violation of the CBA. The Board awarded the grieving employees seven and one-half hours at straight time pay for every week each employee worked under the grieved schedule and the difference between time and one-half and straight time for all hours worked on Saturday under the schedule.

Complete instituted the present action by filing its Civil Complaint to Vacate Arbitra-

tion Award and for Injunctive Relief on November 19, 1993. Complete also filed a Verified Motion for Temporary Restraining Order, Preliminary Injunction Staying Enforcement of Arbitration Award and Order to Appear and Show Cause on November 29, 1993. On December 2, 1993, at the conclusion of a telephone conference where both parties were represented by counsel, this court denied Complete's Motion for a Temporary Restraining Order and ordered both parties to brief the issue of whether this court should issue a preliminary injunction. The court also instructed both sides to file cross motions for summary judgment by December 10, 1993, and any reply or response thereafter in accordance with Local Rule 9 with regard to whether the Board's decision and award should be vacated.

The court denied Complete's Motion for Preliminary Injunction in an Order issued December 17, 1993. Complete and the Union filed their Motions for Summary Judgment on December 10, 1993. Complete filed its Response to the Union's Motion for Summary Judgment on December 27, 1993. The Union filed its Response to Complete's Motion for Summary Judgment on December 28, 1993, and a Reply to Complete's Response on January 5, 1994. Complete did not file a Reply to the Union's Response. The issue of whether the Board's decision and award should be vacated is now ripe for decision.

## DISCUSSION

### Arguments

Complete argues this court should vacate the decision and the award of the Board. Complete advances essentially two arguments. First, Complete asserts the Board did not consider and answer the issue submitted. Complete contends the issue of whether the shift commencing at 11:30 p.m, on Monday and ending at 8:00 a.m. on Saturday was a Tuesday through Saturday shift was never resolved by the Board. Complete maintains that when the Board decided the issue of whether Complete had instituted a Tuesday through Saturday work week in violation of the CBA by looking at how Complete scheduled holidays off went beyond the

scope of the grievance and beyond the authority of the Board. Complete maintains the Board should have decided whether the *start-time* of 11:30 p.m. on Monday and the *end-time* of 8:00 a.m. on Saturday equated a Tuesday through Saturday work week. Complete argues the Board should have limited its decision to an interpretation of Article 72, Section 1 of the CBA, and should not have interpreted any other sections of the CBA.

Second, Complete argues the Board's decision and award did not derive its essence from the CBA as required, and that the Board wielded its own brand of industrial justice in reaching its decision. Complete asserts there is nothing in the contract the Board could have relied upon to determine that the scheduling of time off of employees for holidays warranted the conclusion Complete had instituted a Tuesday through Saturday work week in violation of the CBA. Complete states there is nothing in the CBA that dictates how employees are to be scheduled off for holidays, and therefore, when the Board allegedly relied upon Article 72, Section 2, 3 and 4 for its decision it could not have possibly been relying upon the CBA.

The Union contends that the Board's decision and award should be upheld for exactly the opposite reasons cited by Complete. The Union asserts the Board did consider and answer the ultimate issue before it, that is, Complete instituted a Tuesday through Saturday work week in violation of the CBA. The Union also asserts the Board derived its decision and award from the essence of the CBA. The Union maintains the Board was not limited by the grievance to interpreting only one section of the CBA, and that it was proper for the Board to look to the entire CBA to in order to reach its decision.

### Jurisdiction

The court has jurisdiction over this matter by virtue of Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, and by 28 U.S.C. § 1337. 28 U.S.C. § 1337 states, "The district courts shall have original jurisdiction of any civil action or proceeding arising under

any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." *Id.* It has been held that an action commenced pursuant to 29 U.S.C. § 185 relating to suits by and against labor organizations invokes the original jurisdiction of 28 U.S.C. § 1337. *See, Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *See also, Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *LaBuhn v. Bulkmatic Transport Co.,* 865 F.2d 119 (7th Cir.1988). Moreover, where a party motions a district court to vacate an arbitration award the district court has subject-matter jurisdiction. *Davis v. Ohio Barge Line, Inc.,* 697 F.2d 549 (3rd Cir.1983).

*Standard of Review of Arbitrator's Decision*

Judicial review of arbitration awards is extremely limited and courts are to give arbitrators' decisions considerable deference. *Carpenter Local No. 1027 v. Lee Lumber & Bldg. Material,* 2 F.3d 796, 797 (7th Cir.1993). Courts are to refrain from reviewing the merits of an arbitration award under a collective bargaining agreement. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The limited scope of review by a court is derived from the fact that the arbitration process is a creature of contract. The parties have contractually agreed to bypass judicial litigation in favor of resolving their disputes through private arbitration. *Lee Lumber,* 2 F.3d 796, 797–98. If a court of law were free to overturn the decision of the arbitrator merely because the court perceived factual or legal errors, the parties would lose the benefit of their bargain. The parties would not be able to rely upon the decision of the arbitrator, and "arbitration which is intended to avoid litigation, would instead become merely the starting point of litigation." *Id.* at 798.

However, judicial deference to arbitration "does not grant carte blanche approval to any decision that an arbitrator might make." *Lackawanna Leather Co. v.*

*United Food & Commercial Workers Int'l Union,* 692 F.2d 536 (8th Cir.1982) (citing *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir.1980). Accordingly, a court may undertake upon a circumscribed review of an arbitration award under limited circumstances. In *Enterprise Wheel,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 the Supreme Court of the United States held:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.... Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, the court's have no choice but to refuse enforcement of the award.

*Id.* at 597, 80 S.Ct. at 1361. Therefore, the power of the arbitrator is derived from the collective bargaining agreement, *Lee Lumber,* 2 F.3d 796, 798, and the arbitrator can only bind the parties on issues they have agreed to submit to him. *Piggly Wiggly,* 611 F.2d 580, 583.

Thus, the court must determine whether the Board decided the issue submitted to it, and whether the Board's decision derives its essence from the CBA. The court will first address the issue of whether the Board decided the issue submitted to it, and will then focus upon whether the Board's decision derives its essence from the CBA.

*The Board Resolved the Issue Submitted*

"An arbitrator can bind the parties only on issues they have agreed to submit, and whether the arbitrator has exceeded those bounds is a proper issue for judicial determination." *Lackawanna Leather,* 692 F.2d 536, 538. Furthermore, the arbitrator exceeds

his authority by deciding issues not submitted by the parties. *Id.* at 538–39.

In the present case, the Board decided the ultimate issue before it, that is, whether Complete instituted a Tuesday through Saturday work week in violation of Article 72, Section 1 of the CBA [1] when the work week began at 11:30 p.m. on Monday and ended at 8:00 a.m. on Saturday. The board answered this question in the affirmative.

■■■ The court notes the parties were free to stipulate to the Board the exact issue to be resolved. However, the parties did not do so. Therefore, the parties empowered the Board to decide the issue raised in the grievance. *Piggly Wiggly*, 611 F.2d at 584. The grievance itself becomes the stipulation and defines the limits of the Board's authority. *Id.* In the present case, the grievance is typed on a standard form and states as follows:

> This is filed to protest the Company actions effective 6–17–91, at which time the Company cancelled the Monday through Friday shifts of approximately 9 employees and forced them on a shift which is a Tuesday through Saturday work week. This work week begins at 11:30 PM on Monday nights and ends at approximately 8:00 AM on Saturday mornings. This is a violation of the Contract and of the Arbitrator's decision in the Case # FMCS 89–19901. We are requesting 8 hours pay per person for each Monday work day missed plus time and one half for all hours worked on Saturdays, from the effective date of the work week change until the work week is change back to Monday through Friday.

The grievance also has a fill-in-the-blank space for the specific violation alleged under the CBA. Article 72, Section 1 is typed in this space. Thus, the grievance defines the issue submitted to the Board.

The Board obviously considered the grievance because it framed the issue in its decision as such:

Was the Company in violation of the Agreement and more particularly Article 72, Section 1 of the Central/Southern Supplement by scheduling a shift commencing at 11:30 p.m. on Mondays and staffing said shift with a majority of its garage employees at the Company's Roanoke, Indiana facility? If so, what is the remedy?

(Report and Decision of Board of Arbitration, p. 2). Thus, the grievance framed the issue presented to the Board; whether Complete violated Article 72, Section 1 by instituting a Tuesday through Saturday work week, and this was the issue considered and answered by the Board.

■■■ Complete asserts the board did not consider the issue submitted and went beyond its limited authority by deciding issues not submitted. Complete argues the Board exceeded its authority when it decided the grievance by looking at how Complete scheduled employee holiday time off. Complete argues that the issue of how employee holiday time off was scheduled was not an issue before the Board, and that the Board should have only interpreted Article 72, Section 1 of the CBA when it rendered its decision.

Complete's argument is without merit. The Board obviously decided the issue presented to it. Complete wishes to reframe the issue that was submitted to the Board now that the Board has rendered its decision. Complete emphasizes the fact the Board never expressly ruled on whether the *start-time* of 11:30 p.m. on Monday equated to a Tuesday through Saturday work week. Complete notes there is no explicit contract provision limiting Complete's right to determine the start time of a shift.

The issue submitted to the Board, however, was whether the entire work week, commencing at 11:30 p.m. Monday and ending at 8:00 a.m. Saturday was in violation of the contract, not just whether the start-time on Monday violated the CBA. Complete's argu-

---

1. Article 72, Section 1 of the CBA states:
   Eight (8) consecutive hours (exclusive of one-half (½) hour lunch period) shall constitute a standard workday. Forty (40) hours shall be the standard workweek to be worked in five (5) eight (8) hour days. Monday through Friday where presently in effect; Tuesday through Saturday where presently in effect; unless changed by mutual agreement of the Local Union and the Company.
   The Employer may establish a Tuesday through Saturday work week at a new facility established after the date of ratification of this Agreement.

ment really focuses on *how* the Board reached its decision; not whether the Board considered the ultimate issue of whether the shift equated a Tuesday through Saturday work week.

The Board refused to determine whether the start-time of 11:30 p.m. on Monday dictated a finding one way or the other. Instead, the Board looked at how Complete scheduled time off for holidays in order to determine the ultimate issue; whether Complete violated the CBA "by scheduling a shift commencing at 11:30 p.m. on Mondays and staffing said shift with a majority of its garage employees." *supra.* Moreover, instead of looking at the start time of the shift, the Board might have focused on the *end-time* of the shift in reaching its decision. However, the Board decided not to look at start or end-times, but based its decision on different sections of Article 72 of the CBA, *see infra.*

In support of its position that the Board did not decide the issue submitted, Complete relies upon a letter written by the Board's Neutral Chairman in response to Complete's Board member's letter of dissent. The Chairman writes in his response that the basic issue presented may not have been answered, and that he obviously failed to explain the problem adequately. He also states the Board decided the case on the facts presented and those facts prevented any possibility of the Board finding that the newly implemented shift was a Monday through Friday shift.

The court notes the letter is drafted in about the same clarity and intelligibility as the Board's decision in this case and refuses to place great weight on the letter. The letter is filled with inconsistencies and does not aid the court in reaching its decision. Furthermore, the court believes it should render its decision by placing the greatest weight on the Board's decision and on the language of the CBA, and not on extraneous matters that occurred after the Board's decision.

**2.** "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority,

### The Board's Decision Derives its Essence from the CBA

■ As noted *supra,* judicial review of arbitration awards is extremely limited and courts are to refrain from reviewing the merits of an arbitration award under a collective bargaining agreement. The court must uphold the arbitrator's decision so long as it "draws its essence from the collective bargaining agreement," even if the court believes the arbitrator misconstrued the contract. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Whenever an arbitrator misreads a contract, it is possible to say that the decision does not derive its essence from the contract. "But so long as the award is based on the arbitrator's interpretation—unsound though it may be—of the contract, it draws its essence from the contract." *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 184 (7th Cir.), *cert denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1985).

■ In *Ethyl Corp.,* the Seventh Circuit Court of Appeals formed the standard of review that this court must follow.

It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to "draw its essence from the collective bargaining agreement."

*Id.* at 184–85 (quoting *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361)) (emphasis in original). Furthermore, any reasonable doubt as to whether the arbitrator's decision draws its essence from the collective bargaining agreement must be resolved in favor of the arbitrator. *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361. Moreover, it is improper to subject the decisions of arbitrators to "beady-eyed" scrutiny, *Chicago Typographical Union v. Chicago Sun–Times,* 935 F.2d 1501, 1506 (7th Cir.1991), for to do so may lead arbitrators not to write any supporting opinions for their decisions. *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361.[2] Thus, it must follow that since arbi-

is not a reason for refusing to enforce the award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no support-

trators' decisions must be accepted even when erroneous, they can not be required to write good opinions. *Chicago Sun–Times*, 935 F.2d at 1506.

The Board was bound to interpret the contract and had no authority to modify or rewrite any provision of the contract.[3] Complete argues the Board's decision does not derive its essence from the CBA in that its decision is based on how Complete scheduled holiday time off for the employees and is not an interpretation of the CBA. Complete challenges the Union, or the Board, to point to a CBA provision that limits Complete's right to set start-times of shifts or a provision that states how Complete must schedule time off for a holiday. Because there is no express CBA provision that deals directly with the issue submitted, Complete concludes, the Board must have looked beyond the CBA for its decision.[4]

▆▆▆▆▆ The court does not agree. Contracts have express as well as implied terms and the authority of an arbitrator to interpret the collective bargaining agreement includes the authority to discover such implied terms. *Ethyl Corp.*, 768 F.2d 180, 186.

[A]s long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute ... In such cases, judicial review is limited to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement.

*Id.* (quoting *Desert Palace, Inc. v. Local Joint Executive Bd.*, 679 F.2d 789, 793 (9th Cir.1982). The arbitrator is not limited to a literal reading of the contract. *Ethyl Corp.*

768 F.2d at 186. Even if there is a provision in the contract that expressly confines the arbitrator to the "written provisions" of the contract, he may infer conditions from the contract. *Id.*

The pertinent parts of the CBA the Board referenced to in its decision were Article 72, Sections 1, 2, 3 and 4. The court finds it plausible the Board rendered its decision from within the general framework of the agreement. Article 72, Section 4 states in pertinent part:

Overtime and/or Premium Rates

(a) All Sunday work shall be paid for at the rate of double the regular hourly rate. The term "Sunday work" means those hours between 12:00 o'clock midnight Saturday and 12:00 o'clock midnight Sunday.

Double time shall be paid for work performed on the following holidays:

Fourth of July, Labor Day, Thanksgiving Day, day following Thanksgiving Day, December 24th, Christmas Day, New Years Day, Memorial Day, Good Friday, and a personal holiday.

Double time for holiday work is in addition to the eight (8) hours' holiday provided for in Article 52.

Article 72, Section 2 states that weekly working schedules shall be posted and that the starting times of employees shall not vary during any calendar week. It also provides that a regular weekly schedule may start on Sunday, but the premium Sunday work rate will apply and shall be considered as extra work, and not part of the five (5) day work week. Article 72, Section 3 provides that if an employee reports to work on the first day and the scheduled days thereafter of his

---

ing opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361.

3. Article 7, Section 9(d) of the CBA states in pertinent part:

The Board of Arbitration shall have the authority to interpret an apply the provisions of this Agreement or Supplements thereto, where appropriate, but shall not have the authority to amend or modify this Agreement or Supplements thereto, or establish new terms and con-

ditions under this Agreement or Supplements thereto.

4. "There is no language in Article 72, Sections 3 and 4, that states or remotely implies that an employers method of scheduling time for a holiday is determinative of whether the workweek is a Monday through Friday workweek or a Tuesday through Saturday workweek within the meaning of Article 72, Section 1. (Complete's *Brief in Support of Motion for Summary Judgment*, p. 15).

regular scheduled work week, he shall be guaranteed forty (40) hours pay at eight (8) hours per day.

The Board reasoned that the 11:30 p.m. Monday through 8:00 a.m. Saturday shift was a Tuesday through Saturday shift because after the shift was initiated, with a single exception, every holiday schedule was set up as if the employees on that shift were actually working Tuesday through Saturday. The Board held:

> On work weeks where the holiday was Friday, the employees on the morning shift, Monday through Friday, received Friday off. Those employees on the 11:30 p.m. shift worked the fifth day of the week, and received the fourth day off. This is consistent with a work week which is Tuesday through Saturday.

(Report and Decision of the Board of Arbitration, p. 9). Although the Board's decision is somewhat cryptic, it relied upon the provisions of the CBA that deal with premium rates and holidays in reaching its ultimate conclusion. Implicit in the Board's reasoning is that because Section 4 dictates that doubletime must be paid on both Sundays and holidays, the provision in Section 4 that defines Sunday must necessarily, by logic, define the days for the rest of the week. Thus, if Sunday is 12:00 o'clock midnight Saturday to 12:00 o'clock midnight Sunday, Monday must necessarily follow from 12:00 o'clock midnight Sunday to 12:00 o'clock midnight Monday. Also implicit in the Board's reasoning is that although the days listed as holidays were only defined by their common names and not in precise terms of time, Complete treated the holiday as running from 12:00 o'clock midnight to 12:00 o'clock midnight the following day.

This interpretation is consistent with the Board's conclusion that Complete treated the employees on the 11:30 p.m. shift as if they were working Tuesday through Saturday. The Board implicitly concluded that Complete may not assert that the employees who start work at 11:30 p.m. on Monday work Monday through Friday for purposes of calculating holiday pay, i.e., the holiday pay rates run from midnight to midnight and at the same time assert that the same employees work Monday through Friday for purposes of scheduling the work week around the holiday and requiring the employees to return on their fifth day of work, which practice is consistent with a Tuesday through Saturday work week. Thus, the court holds the Board's decision draws its essence from the CBA.

The court finds the present case similar to *Chicago Typographical Union v. Chicago Sun–Times*, 935 F.2d 1501 (7th Cir.1991). In *Chicago Sun–Times*, the union asked the court to vacate an arbitrator's decision where the union contended the decision did not derive its essence from the collective bargaining agreement, and the arbitrator had gone beyond his authority of only interpreting the agreement. At issue was the interplay of section 7(a) of the main agreement with section 7(b) of the supplemental agreement. In reaching his decision the arbitrator stated, "[n]or is there need to determine the application of Section 7(b) to the circumstances of this case." *Chicago Sun–Times*, 935 F.2d at 1503. Because of this language, the union asserted the arbitrator must have looked beyond the collective bargaining agreement and implemented his own brand of industrial justice. The Seventh Circuit Court of Appeals disagreed.

The Court of Appeals held that there was nothing in the arbitrator's decision tending to show that the arbitrator was not interpreting the agreement. *Id.* at 1505. The Court stated the arbitrator may have *erroneously* interpreted the contract, but the arbitrator's failure to articulate a reason why he thought it unnecessary to consider section 7(b) was not indicative that he disregarded the agreement in arriving at his decision. *Id.* The Court then went on further and speculated as to what the arbitrator may have reasoned, much as this court has done in the present case.

Finally, the Court of Appeals stated:

> The problem is that the arbitrator did not articulate this or any other interpretation of section 7 that would reconcile its two clauses ... As a result, the opinion is not a reasoned statement of the grounds for its result. but it is still an interpretation of the contract. [The arbitrator] did not say,

"I shall ignore section 7(b) because it contravenes my notions of sound labor relations." He believed section 7(b) to be inapplicable, but there is nothing to suggest that he arrived at this belief other than by interpreting the Main Agreement.

*Id.* at 1505–06. Thus, the Court found the case inapposite to other cases where the Court had determined that the arbitrator's decision did not derive its essence from the collective bargaining agreement. *See, Roadmaster Corp. v. Production Maintenance Employees' Local 504,* 851 F.2d 886 (7th Cir.1988) (where arbitrator expressly stated his decision was not based on the contract); *Young Radiator Co. v. International Union,* 734 F.2d 321 (7th Cir.1984); *Miller Brewing Co. v. Brewery Workers Local Union,* 739 F.2d 1159 (7th Cir.), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1984) (noncontractual basis may be inferred as only way arbitrator could have decided the issue).

In the present case, the Board analyzed how Complete calculated holiday rates of pay and how Complete scheduled time off for weeks in which a holiday fell. The court finds the Board's decision cryptic and somewhat uninformative, but nevertheless holds that the decision derives its essence from the CBA. As the Court of Appeals in *Chicago Sun–Times* was unable to conclude the arbitrator relied upon his own notions of industrial justice in reaching his decision, so too this court is unable to conclude the Board ignored the CBA because the Board failed to articulate the reasoning contained in its decision. "The opinion is not a reasoned statement of the grounds for its result. But it is still an interpretation of the contract." *Chicago Sun–Times,* 935 F.2d at 1505.

Complete also takes issue with the Board when it considered evidence at the arbitration hearing that was not available at the time the grievance was filed by the Union. Complete argues that the Board should not have looked at evidence and events that occurred after the initiation of the 11:30 p.m. shift and after the grievance was filed. Specifically, Complete argues the Board should not have considered how Complete scheduled time off for holidays after Complete instituted the 11:30 p.m. shift.

The court is not in a position to decide what evidence was to be admissible at the arbitration hearing held before the Board. Once it has been determined that an issue is arbitrable, " 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987) (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Complete and the Union were free to contract as to what procedures and ground rules the Board was to follow including what evidence was to be admissible at a hearing of the Board. The court notes that the parties did contract as to what procedures were to be followed by the Joint Arbitration Committees, the final step in the grievance procedure before submitting the issue to the Board if the Joint Arbitration Committee could not resolve the issue. Article 7, Section 6 of the CBA sets forth that "[a]ll Joint Arbitration Committees shall formulate rules of procedure to govern the conduct of their proceedings."

However, neither the Union nor Complete has demonstrated to the court that the Board deviated from procedures it was to follow specifically set forth in the CBA. Moreover, neither party has demonstrated to the court that there were *any* procedural guidelines concerning the admissibility of evidence set forth in the CBA for the Board to follow. Thus, the court concludes Complete may not argue procedural matters that occurred at the hearing of the Board.

*Conclusion*

For all of the foregoing reasons, Complete's Motion for Summary Judgment filed on December 10, 1993, is hereby DENIED, and the Union's Motion for Summary Judgment filed on December 10, 1993, is hereby GRANTED.